Our last case for today is 419-0117 for the appellant Sarah Lucy. Is that pronounced correctly? And for the people, Allison Brooks. Again, we're here early and I want to thank you for getting here early. We ask you to do that so that in case, as has now happened, we can start early. And sure enough, here we are, so thank you for doing it. So, Ms. Lucy, you're ready to proceed. Good afternoon, and may it please the court. Counsel? Counsel. My name is Sarah Lucy with the Office of the State Appellate Defender, representing Cordero Allen. In this case, the state failed to meet its burden of proof when it did not call the owner of the property in question to testify that she did not give Mr. Allen her permission to be in the house on that day. This is especially important in this case because Mr. Allen was her next-door neighbor, and while she had asked that the house be boarded up, it was absolutely likely that she had any permission from the owner, Ms. Derrickson, to take care of an emergency that was arising. Counsel, let me ask you, does the owner have to be called, or could the facts be so overwhelming that lack of authority could be inferred? I'm not saying we have that here, but generally, how would you respond to that? I would agree that in this case we do not have that. However, I could foresee a different case where the facts were so overwhelming that the owner would not have to be called to testify. But in this case, because the facts are not overwhelming and are very indicative that he might be able to help out a neighbor, Ms. Derrickson's lack of testimony, the fact that she was not called to the stand simply to tell the court, nope, I did not tell any of my neighbors before this incident happened that they could help out in an emergency. The state just simply failed to meet its burden that it had to prove that he did not have authority in this case. Well, Ms. McGuire, which is the owner's daughter, she testified that she did not know whether or not her mother or her brother knew Mr. Allen, or whether or not they had given him permission. She was only able to testify that she herself had not given him permission, but she was never the owner of the house, and had not lived in the house since 2003. What she did testify to was that she lived in a neighborhood that, to her testimony, was in a poor neighborhood, and that neighbors looked out for one another because of that. She testified about an incident where a grill had gone missing from her front porch, and neighbors had helped her retrieve that. And in fact, in this case, her across-the-street neighbor had called 911 to let them know about two people that were breaking into the house. So it's entirely reasonable that when Mr. Cordero came home to his house next door at 1007, he observed, as he testified to, that there was a stove sitting in the doorway. After a window had been broken, a piece of plywood had been removed from the door, and that being a good neighbor, he went to push the stove back in, and then he left his house to go and call the police. This is consistent with Officer Grimes' testimony that when Mr. Allen left the house, he left the house without the stove and without the dolly. He left completely empty-handed. Despite the fact that Officer Grimes hadn't alerted Mr. Allen that he was there, he had observed what he observed in the house. He stepped back around the corner, and then Mr. Allen left with nothing in his hands. Would you clarify for me, when the officer looked in the house or the garage and saw what he saw, which I'm not sure if it's the house or the garage, what did he say about the direction your client was pushing the stove in? Officer Grimes testified that Mr. Allen was pushing it towards the door. Towards the front door of the house? No. Towards the exit door of the garage? Yes, the one that was closest to 1007. Mr. Allen clarified when he testified on his own behalf that he was not familiar with moving dollies, and I think it's entirely consistent with how dollies move that sometimes it requires a bit of directional back and forth. And again, he then put the dolly down and left the house empty-handed. He did not carry the stove. So while the state believes that it proved its case with circumstantial evidence, the Illinois Supreme Court said in People v. Rhodes, where the only evidence supporting a conviction is circumstantial, the guilt of the accused must be so thoroughly established as to exclude every reasonable hypothesis of innocence. In this case, I do not believe that every reasonable hypothesis of innocence has been excluded, and so if the state wishes to rest purely on circumstantial evidence, it also has not risen to that burden of proof of beyond a reasonable doubt. While it says that there was a forced entry, there's no proof that Mr. Allen broke a window because when the police officer came upon him, he didn't have any injury on his hands, he didn't have any broken glass on his person, he didn't have any burglary tools that would be consistent with him being the one who broke the glass. And in fact, the 911 call indicated that there were two people that committed the initial burglary. The state also contends that he only told the police, or that he told the police, this is my house. Officer Grimes said that that was his indication. Mr. Allen testified that he pointed to the house next door and said, this is my sister's house. Did his sister testify? His sister did not testify. Was there anything offered confirming that he did live in that house, the house next door? There was nothing that was presented to the jury. However, in the common law records, any time that his address is listed, it's listed as 1007 Shasta Drive, which is the house in question. Just to be clarified, the person who he said was his sister, not actually his sister, he just called her that because he had been raised alongside her by her mother, right? Correct, Your Honor. That woman was his aunt. He lived with them for the first 25 years of his life. He considers that woman his sister. I say sister for sake of clarity. Right, I just wanted to make sure I'm clear on that. Yes, Your Honor. And then finally, the State contends that he falsely said that the stove was already in the door when he returned home, but the State offered no proof that the stove was not, in fact, already in place by the time he came home. And indeed, it is consistent with there being two prior burglars who moved the stove and then abandoned their crime that he came across and tried to be a good neighbor to his next-door neighbor. For these reasons, he asks that this Court reverse this conviction, knowing that the State did not meet its burden of proof and offered insufficient evidence as to the matter of authority. Turning, if I may, to the issue of the jury polling that occurred in this case, the Court only polled 11 of the 12 jurors and completely failed to poll juror Earp, who was one of the 12. And I believe the Illinois Supreme Court case of People v. Kellogg is incredibly indicative in this case of the importance of a complete jury polling. There, before the court polled one of the jurors, the juror in question gave no indication that she had not fully agreed with what had happened in the jury room. She didn't ask to speak to the court. She didn't bring anything to the court's attention. She sat until she was asked by the court, is this your verdict? And then said, no, or rather indicated some internal conflict and wasn't sure that that was really her verdict. And there was no way of knowing that without asking each individual juror. So in this case, by not asking Juror Earp, there's no way of knowing whether he was that pivotal 12th juror who would have made the vote not unanimous. Because a criminal case must be decided by unanimous verdict. And in this case, we do not have that guarantee, despite the fact that the defendant requested the jury polling. It is worth this court remanding this case back to the new trial if it decides not to reverse outright his conviction so that the entire jury can be polled. If this court has no further questions, then I'm further relying on the arguments in the brief. I see none. Thank you. Thank you. Ms. Brooks. Thank you, your honors. Good afternoon. May it please the court. My name is Allison Paige Brooks. I appear on behalf of the people. The standard cited in the defense brief is the Cunningham case in terms of whether due process is satisfied by the state's proof, got a reasonable doubt of the conviction. And I do not believe that case would stand for the proposition that the reasonable doubt would exist if the defendant finds a reasonable hypothesis of innocence in a circumstantial case. My understanding is that that standard has been disavowed since that had formerly existed in the law for purely circumstantial cases. But instead, the correct standard review is cited in the Cunningham case and that's cited in both parties' briefs. Any rational trier fact could have found the essential elements of the crime beyond a reasonable doubt and that the evidence must be looked at in a light most favorable to the prosecution. And that means that every reasonable inference must be accepted in favor of the prosecution. And those principles are very important in a case like this where there is some dispute between the parties as to what happens. And so if the jury could reasonably believe the state's proof with the inferences that are reasonably drawn therefrom and reasonably disbelieve the defendant's own claims, then that could constitute proof beyond a reasonable doubt. And here in the circumstantial evidence is fairly overwhelming in support of the officer's observations as to what was going on here. And one of those circumstances including a broken window with glass inside the residence and a bucket underneath which could have been used to step on in order to get up into the window. And so that disruption in the window shows the point of entry of a person who then is asked to remove the boarding from the garage door near where the dolly with the stove is located, the stove that was missing from the kitchen. So in those circumstances, the jury can reasonably infer that the defendant is in fact the person who broke into the window and was removing the dolly with the stove to take it next door where he said he was living. Who owned the building? The building, I believe, was like Phyllis Derrickson, something who did not testify. According, Priscilla, sorry, Derrickson, Priscilla Derrickson. The daughter testified about the brother dying, the occupant there, and the place needed to be boarded up to protect the belongings until they could get him removed. So it's because it is boarded up and it is the intention of the owners to keep it boarded up to protect the property inside that that is an indication that whoever is inside attempting to remove those belongings does not in fact have authority to do so from anybody including the owners because of the circumstances of it being boarded up and other evidence about it being boarded up to protect the contents of the house. And also when the defendant says in response to the police question at the scene it's being his sister's home and then at trial he attempts to explain that, well, he was really referring to the next door where his cousin lived who he thought was his, he treated as if she was his sister because of them growing up together. Again, that's all a jury question. And the jury can rationally disbelieve the defendant's explanation for his comment to the police and believe that the defendant actually displayed consciousness of guilt by attempting to say, well, it's essentially telling the police it's okay for him to do this because it's his sister's home, meaning the house that he was in being his sister's home, and that's not true. And if he's lying to the police in order to try to get away with this, then it's consciousness of guilt. And that means that the jury can then reasonably infer that he was the person who busted through the window and got inside and was attempting to remove the stove. So in the light most favorable to prosecution, this is sufficient evidence to prove the element that the defendant entered without authority. And also the jury could consider the defendant's testimony that he was acting as a concerned citizen, which means that it's not that he is saying that I had authority from the homeowner to do this, but he's simply saying I just saw this house, it seemed open, and I was going to go inside as a concerned citizen to check it out. If that is his explanation for being inside, the jury could believe as much of that as it wants to, and part of that could be that with respect to the proof of the element that he entered without authority is that he is by his own admission entering as merely a concerned citizen, not somebody who's acting with authority from an owner. For example, somebody who has a key as a next door neighbor who might have received a key, for example, from an owner. That's not the claim that he made. He claimed that he simply opened through an open door as a concerned citizen. So the jury could then agree that this constitutes proof that he in fact entered without authority from the owners. And so for those reasons, evidence was sufficient. And with respect to polling the jury, the state relies on the Sharpe case. It's not second-pronged plain error because in this record has no evidence that the verdict was not unanimous. And so without that sort of showing of some sort of disagreement or problem that might call into question the unanimity of the verdict, the signed verdict form constitutes the showing that this was in fact a unanimous verdict, and the lack of polling of one juror without objection does not constitute a reason to reverse the verdict on the ground of plain error. In other words, I'd entertain questions or request this court to defer. Thank you, Your Honor. Thank you, counsel. Ms. Lucy? Can you brief my son about it? Thank you, Your Honor. Briefly, in response to the state's argument about the burden of proof, I understand that it's on me in this case. However, to quote the Illinois Supreme Court again, merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision. And I would say that in response to your question, Justice Stegman, who owned the building? Only Priscilla Derrickson. The state offered evidence, Exhibit L, that she was the sole owner listed on the deed. She had owned the house for a great many years, and the only thing that the state had to do to meet its burden in this case was call her to testify that she had not given him permission. If the state had done that, I could not be in front of this court today. But unfortunately, for some reason, the state chose not to do that, and therefore did not meet its burden. To the jury polling question, I first urge that the court does not need to follow the second-prong analysis in Sharpe, because that's a First District case, and this is a novel question for this court, of whether the jury polling issue will be accepted as second-prong error. But I would also argue that everything that the state and I have said at this podium today has pointed to this being first-prong plain error. Clearly, the evidence is very close. There's very little debate about the actual facts, but very much debate as to who had the actions that led to the facts. So the state points to the broken window, but there's no indication that Mr. Allen was the person who broke the window. We know that a stove inside of the house was moved into the garage. We don't know who initially moved that stove from the house into the garage. The 911 call would indicate that it was two men, not Mr. Allen working alone. And so the closeness of this evidence puts this case under the plain error doctrine, the first prong. Unless this court has any questions. Thank you, counsel. Thank you. The court will be in recess until tomorrow morning.